# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RACHEL Y. ADKINS,**
**Claimant Below, Petitioner**

**FILED**
**March 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-295**       (JCN: 2022007473)

**SOUND MIND, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rachel Y. Adkins appeals the June 18, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent Sound Mind, Inc. ("SM") filed a response.[1] Ms. Adkins did not reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied the addition of cervical disc displacement at C5-C7 as a compensable condition.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the Board's decision is vacated, and this case is remanded for further proceedings consistent with this decision.

On October 8, 2021, while employed by SM, Ms. Adkins was injured in a motor vehicle accident ("MVA"). On the same day, Ms. Adkins was seen at Beckley ARH, where she complained of neck and right wrist pain following the MVA. The assessment was acute cervical myofascial strain and right-side lumbar radiculopathy. Ms. Adkins underwent an x-ray of the cervical spine, revealing minimal degenerative changes at C6-C7 and no fracture or dislocation.[2]

---

[1] Ms. Adkins is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. SM is represented by James W. Heslep, Esq., and Steven K. Wellman, Esq.

[2] Prior to the compensable injury, on July 13, 2021, Ms. Adkins was seen by Tammy Sauls, APRN, FNP-BC. Ms. Adkins presented with a stiff neck and a headache. Ms. Adkins reported that she went down a water slide with her grandchild too fast.

Ms. Adkins was seen at MedExpress on October 12, 2021, and she reported mid, lower, and upper back pain, and leg numbness following the MVA. The assessment was sprain of ligaments of the lumbar spine, thoracic spine, and cervical spine. Ms. Adkins underwent an x-ray of the lumbar spine, revealing no acute lumbar fracture or subluxation. Ms. Adkins submitted the Employees' and Physicians' Report of Occupational Injury or Disease dated October 12, 2021. Ms. Adkins indicated that she sustained injuries to her neck and back on October 8, 2021, when the car she was driving was rear-ended by another vehicle. The physician's section reported that Ms. Adkins sustained cervical, thoracic, and lumbar spine injuries as a direct result of an occupational injury.

The claim administrator issued an order dated November 2, 2021, which held the claim compensable for lumbar sprain. On November 12, 2021, Ms. Adkins underwent MRIs of her cervical and lumbar spine. The lumbar spine MRI revealed a mild concentric disc bulge at L4-L5, and no evidence of lumbar intervertebral disc protrusion, spinal stenosis, or nerve impingement. The cervical spine MRI revealed mild broad-based protrusion of C6-C7 intervertebral disc, greater to the left of midline, along with small marginal osteophytes, resulting in mild left foraminal stenosis, and no nerve impingement identified; and mild broad-based protrusion of C5-C6 intervertebral disc, along with marginal osteophytes, resulting in mild encroachment on the neural foramina, and no nerve root impingement identified.

On December 29, 2021, Ms. Adkins was seen by Rajesh V. Patel, M.D. Ms. Adkins reported numbness down her right arm, numbness in the left arm and hand, numbness in her lower back and legs, and back pain. Ms. Adkins further reported that physical therapy had aggravated her pain. The assessment was cervical sprain, lumbar sprain, cervical disc protrusion C5-C6, cervical disc protrusion C6-C7, lumbar disc protrusion L4-L5, cervical radiculitis, cervical facet sprain, and lumbar facet sprain.

Rebecca Thaxton, M.D., authored a Physician Review report dated January 11, 2022. The issues presented were whether a TLSO brace, bilateral medial branch blocks ("MBB") at C4-C5, C5-C6, and C6-C7, lumbar MBBs, and physical therapy should be authorized; as well as whether muscle spasm, cervicalgia, lumbago, torticollis, other headache syndrome, sprain of sacroiliac joint, cervical disc protrusion, lumbar disc protrusion, cervical radiculitis, cervical facet sprain, and lumbar facet sprain should be added as compensable components of the claim. Regarding the addition of the requested conditions, Dr. Thaxton opined that they should not be added; she opined that some of the requested diagnoses were vague symptom codes and are accounted for by way of the diagnoses already held compensable. Regarding the disc protrusions, Dr. Thaxton reported they were not confirmed as symptomatic herniated nucleus pulposus causing frank radiculopathies and that it would be premature to add them to the claim.

On January 21, 2022, Ms. Adkins underwent bilateral MBB at C4-C5, C5-C6, and C6-C7 performed by Dr. Patel. The pre- and post-operative diagnoses were cervical sprain, cervical disc bulging at C5-C6 and C6-C7, and cervical facet sprain. Ms. Adkins followed up with Dr. Patel several times from January 26, 2022, through May 16, 2022. Ms. Adkins presented with neck and back pain. On February 16, 2022, Dr. Patel reported that he reviewed the cervical MRI from February 15, 2022, and compared it to the MRI from November 12, 2021. He said there were no significant interval changes noted. There is spondylosis noted with multilevel degenerative changes and facet arthrosis. The assessment was cervical sprain, lumbar sprain, cervical disc protrusion at C5-C6, cervical disc protrusion at C6-C7, lumbar disc protrusion at L4-L5, cervical radiculitis, cervical facet sprain, lumbar facet sprain, neural foraminal narrowing at C5-C6 and C6-C7, and left S1 radiculitis. On May 16, 2022, Dr. Patel opined that the EMG related to the cervical spine was read within normal limits.

Ms. Adkins underwent an MRI of the cervical spine on February 14, 2022, revealing mild cervical spondylosis with components of multilevel disc degeneration, vertebral body lipping and facet hyperostosis, and no definitive foraminal compromise. On April 14, 2022, Dr. Patel performed bilateral MBB at L3-L4, L4-L5, and L5-S1. The pre- and post-operative diagnoses were lumbar disc bulging at L4-L5, lumbar sprain, and lumbar facet sprain. On April 26, 2022, Dr. Patel performed bilateral MBB at C4-C5, C5-C6, and C6-C7. The pre- and post-operative diagnoses were cervical sprain and cervical facet sprain.

On May 25, 2022, David Soulsby, M.D., performed an independent medical evaluation ("IME") of Ms. Adkins. Ms. Adkins reported neck pain, migraines, lower back pain, pain that radiated into the right upper extremity and occasionally into the left, and pain radiating into both buttocks and down the left leg. Ms. Adkins denied any prior injuries to the neck or back. The assessment was cervical sprain/strain, lumbar sprain/strain, and degenerative disc disease of the cervical and lumbar spine. Dr. Soulsby opined that Ms. Adkins had preexisting degenerative disc disease, which had caused bulging/protrusions. He said that no acute findings were noted on the radiographic studies, leading to the conclusion that the findings are degenerative and not related to an acute injury.

Dr. Patel submitted a Diagnosis Update form dated July 18, 2022, requesting that lumbar sprain, cervical sprain, lumbar S1 radiculitis, and cervical C6-C7 disc bulge be added as compensable conditions in the claim. Randall L. Short, D.O., authored a Physician Review report dated August 10, 2022. Dr. Short opined that cervical disc displacement at C5-C6 and C6-C7 should not be added because there was no evidence that the bulges were secondary to the compensable MVA. Dr. Short further opined that lumbosacral radiculitis should be added because the EMG identified radicular findings.

On August 22, 2022, the claim administrator issued a grievable order denying the request to add cervical disc displacement at C5-C7 as a compensable condition. The order

3

also added lumbar radiculitis as a compensable condition. On September 29, 2022, the Encova Select Grievance Board found that the denial of cervical displacement at C5-C7 should be affirmed based upon the recommendation of Dr. Short. Ms. Adkins protested this order.

Ms. Adkins was seen by Dr. Patel on February 1, 2023, and February 15, 2023. Dr. Patel opined that the diagnoses of cervical sprain, lumbar sprain, lumbar facet sprain, cervical facet sprain, cervical disc protrusion at C5-C6, cervical disc protrusion at C6-C7, and left S1 radiculopathy should be held compensable. Ms. Adkins reported that she was asymptomatic and able to work and was functioning well prior to the compensable injury. Dr. Patel stated that the compensable diagnosis would involve cervical disc displacement as evidenced by the MRI findings. Dr. Patel further opined that Ms. Adkins had not reached MMI from the compensable injury.

On March 8, 2023, Ms. Adkins was seen by Andrew C. Thymius, D.O. The assessment was spondylosis without myelopathy or radiculopathy of the lumbar region and lumbosacral region. Dr. Thymius reported that because Ms. Adkins had an 80% reduction in lumbar facet pain after MBB, it was medically necessary to treat her lumbar pain with lumbar facet joint nerve radiofrequency ablation.

Prasadarao B. Mukkamala, M.D., performed an IME of Ms. Adkins on March 24, 2023. Dr. Mukkamala found Ms. Adkins to be significantly disabled to the point that she cannot sit for any period, she cannot stand for any period and cannot lie down on the examination table. He attributed this disability to misplaced, ineffective, and inappropriate treatment. Dr. Mukkamala opined that the cervical disc protrusion was part of Ms. Adkins's naturally occurring age-related degenerative condition and therefore, should not be added to the claim. Additionally, he indicated that preexisting conditions became symptomatic after the compensable injury.

On April 24, 2023, Ms. Adkins followed up with Dr. Patel. Ms. Adkins reported that the neck MBB helped but started to wear off. Dr. Patel recommended a repeat of the cervical facet ablations. The assessment was lumbar facet sprain, lumbago, cervical facet sprain, cervicalgia, cervical disc protrusion at C5-C6, cervical disc protrusion at C6-C7, and thoracic sprain.

Dr. Soulsby authored a second IME Report dated July 5, 2023. Dr. Soulsby noted that Ms. Adkins denied any prior injuries to the neck or back. The assessment was cervical sprain/strain, lumbar sprain/strain, and degenerative disc disease of the cervical and lumbar spine. Dr. Soulsby reported that Ms. Adkins's cervical region remained highly symptomatic and that her range of motion was severely limited. Dr. Soulsby opined that Ms. Adkins was not at MMI. Dr. Soulsby authored a third IME Report dated December 19, 2023, in which he reported that Ms. Adkins had cervical and lumbar degenerative disc

disease, which was preexisting. He found no objective finding that associated the cervical disc protrusions at C5-C7 with the compensable injury.

On June 18, 2024, the Board affirmed the claim administrator's order, which denied the addition of cervical disc displacement at C5-C7 as a compensable condition. The Board found that Ms. Adkins failed to establish a causal connection between the compensable injury and her diagnosis of cervical disc displacement at C5-C7. Ms. Adkins now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Ms. Adkins argues that the Board did not properly analyze the claim under *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022). Ms. Adkins notes that the Board did admit that her cervical symptoms did not arise until the compensable injury occurred, and further, stated that treatment of the newly symptomatic disability should be authorized. Ms. Adkins further argues that she was not diagnosed with cervical protrusions prior to the injury at hand and she had never received any treatment for such prior to this car wreck. We agree.

The Supreme Court of Appeals of West Virginia held in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016):

5

A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Id.* at 738, 783 S.E.2d at 858, syl. pt. 3

The Supreme Court clarified its position in *Moore*, holding:

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Id.* at 294, 879 S.E.2d at 781, syl. pt. 5

Here, the Board determined that the evidence does not establish that there is a causal relationship between the compensable injury and cervical disc displacement at C5-C6 and C6-C7. The Board further found that the preponderance of the evidence established that cervical disc bulges and cervical disc displacement preexisted the compensable injury. The Board stated that "[a]lthough Dr. Patel requested that cervical disc displacement be added as a compensable condition in the claim, he did not opine that there is a causal relationship between the compensable injury and cervical disc displacement."

Upon review, we conclude that the Board was clearly wrong in failing to adequately consider that Dr. Patel's request states that cervical disc displacement at C5-C6 and C6-C7 conditions should be compensable. It is our view that a medical provider's opinion stating a diagnosis should be compensable is competent evidence that the condition was caused by a compensable injury. We also find that a claimant should not be punished for an insignificant oversight on the part of their physician. Upon remand, the Board should determine the evidentiary weight Dr. Patel's report should be given in relation to the other evidence of record. Further, we note that, although Drs. Soulsby and Mukkamala opined that the disc bulges were preexisting, the Board itself noted that Ms. Adkins had no prior symptoms or treatment for disc bulges. We can find no indication that Ms. Adkins had been diagnosed with disc bulges prior to the compensable injury, nor do we note any pre-injury

6

radiographic evidence establishing that the disc bulges did preexist the compensable injury. We also note no evidence indicating that there were any preceding or interceding incidents or injuries that may have caused the disc bulges.

Accordingly, we vacate the Board's June 18, 2024, order, and remand to the Board for further proceedings consistent with this order.

Vacated and Remanded.

**ISSUED:** March 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White